SUFFOLK OYER AND TERMINER, March, 1853.   Before *S. B. Strong*, Justice of the Supreme Court, *W. P. Buffett*, County Judge, and the Justices of the Sessions.

### THE PEOPLE *vs.* JOHN F. DEWICK.

On the trial of an indictment at the Oyer and Terminer, for murder, after eleven jurors had been drawn and sworn, the next juror drawn was challenged for favor, and the two jurors first admitted, having been sworn as triers and having heard the evidence, the argument of counsel and the charge of the court, after consultation reported to the court that they could not agree in deciding upon the challenge ; it was held, that the challenge must be retried and the court selected the third and fourth jurors to act as triers for that purpose.

Suggestions as to the practice on challenges for principal cause and for favor, and as to the proper mode of selecting triers and deciding upon their competency.

The prisoner was tried on an indictment for the murder of his father.   After eleven jurors had been sworn and taken their seats, John C. Leak, was called as a juror, and being informally examined by consent, stated that he had conscientious scruples against finding the accused guilty of murder from what he had heard, although he had not heard enough to prevent his concurrence in a conviction if the evidence should call for it.   He was therefore challenged *for favor* by the district attorney, on the ground stated in his examination.   The challenge was contested by the counsel for the prisoner.   The two jurors first admitted were sworn as triers.   The proposed juror was then sworn as a witness, and reiterated what he had previously stated.   The triers after hearing the remarks of the counsel, and the charge of the court, and after consulting together, reported *that they could not agree*.   The counsel thereupon submitted the question to the court as to the proper course to be pursued, without any motion, suggestion or argument.

*W. Wickham, Jr.,* (District Attorney) for the people.

*A. T. Rose* & *A. W. Floyd,* for the prisoner.

The following opinion was delivered by the presiding jus
tice, in the conclusion of which his associates concurred.

S. B. STRONG, J.—We are called upon to adopt a rule of pro-
cedure without any statutory regulation, and in the absence of
any discussion, and so far as I know, of any precedent. In
directing the course to be pursued, we must be controlled by a
consideration of the design to be accomplished and the prin-
ciples governing ordinary trials upon the merits, so far as they
may be applicable. We have no other guide. Challenges of
persons called as jurors in criminal cases have latterly become
very common, so frequent indeed that the trials seem to be as
much of the jurors as of the accused. The rule applicable to
them should be well considered and deliberately settled, in order
to prevent the necessity for new trials by reason of trivial mis-
takes, upon matter having but slight reference to the main
issues involved in their decision.

Challenges to proposed jurors, are either for principal cause
or for favor; for principal cause, when the fact alleged would,
if proved or admitted, be sufficient to require the rejection of
the juror, without any proof of its actual influence upon his
mind. In such case, the law presumes the effect from the suffi-
ciency of the cause. Challenges for favor are for matters which
may, or may not, prejudice the mind of the juror, and in such
cases the effect upon his mind is a question of fact.

In challenges for principal cause there may be a demurrer,
admitting the fact, and denying its sufficiency. Then a simple
question of law is presented, which is proper for the decision
of the court. There may be an issue however, as to the fact
alleged, and as that in effect admits its sufficiency if established,
the question would then seem to be a proper one for the deter-
mination of a jury, or, in these cases, the triers who act as
*quasi* jurors. That would harmonize with the well established
rules in trials at law, that to questions of law the court, and to
questions of fact the jurors, respond. I am aware that in
modern practice the courts have decided the challenges for
principal cause as well where questions of fact simply, as

where questions of law, have been involved; but I can find no authority in the old elementary writers, nor in the early reports, for thus submitting the determination of questions of fact to the court; and as it is wrong in principle it seems to me that the safer and more appropriate course is, when such questions are raised on challenges for principal cause, to submit them to the decision of triers.

When challenges for favor are interposed, there can be no demurrer by a party intending to controvert them, as that would admit not only the primary fact alleged, but the charged bias upon the mind of the juror, and thus necessarily effect his rejection. When any issue is joined in such cases, it is simply one of fact, and must, therefore, be submitted to triers. Their decision either way is conclusive as to the fitness or disqualification of the proposed juror. They may disagree however, although, as there are but two, or at the most three, and as the question submitted to them is not one productive of much excitement, such a result is not very probable. When they disagree the challenge still remains. It is not, as some have supposed, in effect decided against the challenger, as he holds, and has failed to establish effectually the affirmative. In all issues of fact one of the parties necessarily holds the affirmative, but when there is evidence sufficient to go to the jury, and the matter has been submitted to them, and they have failed to agree, the question is still an open one, and the action can not be finally decided without another, and an effectual trial. We have no other rules, nor is there any reason why we should have, to govern us on the trials of challenges. It is true that in the case of a disagreement the party interposing the challenge has not fully sustained it, neither has he altogether failed, for where the more usual number of triers has been sworn he has convinced half of them to whom the determination has been submitted that he is right. Under such circumstances, it would be improper to accept or reject the juror. If the imputed bias exists, the proposed juror ought not to be sworn, if it does not, the party offering the challenge has a right to demand his services. There must therefore necessarily

be another trial, and the only remaining question is, in what manner the triers are to be selected.

The usual practice in cases where triers are appointed is, where no juror has been sworn, two triers are named without restriction by the court; when but one of the jurors has been sworn, he acts as trier with any two other individuals selected by the court, and when two of the jurors have been sworn, they are chosen, and if more, the first two. Whether a challenge can be interposed to a trier thus designated, does not seem to have been decided. Probably not, as challenges might then be interminable. No doubt, however, objections may be urged by either party to any one called as a trier, and in such cases the matter should be summarily investigated and decided by the court. It is very proper that the order of selection which I have indicated, should be generally adopted. Parties, and especially those who believe in the rectitude of their own conduct, are solicitous to obtain competent and impartial jurors. Latterly they have become so fastidious upon this subject, and so minute in their investigations, that our trials have been vexatiously and unnecessarily prolonged. A fixed rule of procedure and its observance will best prevent misapprehension and consequent complaint, and the more effectually subserve the ends of justice. But the rule of selection is not so rigid that it may not be relaxed when it becomes necessary. There must be a trial of any challenge properly interposed. When the usual line of procedure can not be strictly pursued we must apply the doctrine of approximation, which the expansive principle of the common law will permit, especially in cases where the main design can be substantially effectuated. The object in these cases is to procure the selection of competent triers. There may be good reasons for giving a preference to those who may have been admitted or found to be competent and unbiased jurors in the cause to be tried, over those whose qualifications have not been settled; but there can be none, other than having and abiding by some rule for preferring the first two to their associates who may have been sworn; nor can

there be any why the court should not make as unexceptionable a selection from the bystanders after some of the jurors had been sworn and proved to be impracticable triers, as they could when the first ballot was drawn from the box. In the present instance, the two jurors selected as triers can no longer act in that capacity. It would be a mere farce and result in nothing, to submit the matter to them again. We must therefore, of necessity, proceed, if we proceed at all, in the same manner as if they had not been sworn. The third and fourth jurors must act as triers.

Those jurors were accordingly sworn as triers. The same evidence was repeated before them. They were addressed by the counsel and charged by the court. After deliberation they reported that the challenge was true, and the juror was thereupon rejected.

The trial proceeded, the prisoner was acquitted on the ground of insanity, and after a subsequent investigation he was sent to the lunatic asylum.